**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: May 17, 2022

S22A0322. WASHINGTON v. THE STATE.

NAHMIAS, Chief Justice.

Appellant Tremaine Washington was convicted of malice murder and other crimes in connection with the shooting death of Robert Jesse Purcell. In this appeal, he contends that (1) the trial court erred by merging, instead of vacating, the counts of felony murder and aggravated assault when sentencing him, (2) his trial counsel provided ineffective assistance in numerous ways, (3) the trial court violated his constitutional right to a trial by jury by allowing the jury to deliberate without all of the evidence, and (4) the trial court denied his constitutional right to be present during trial by conducting a hearing about sending exhibits to the jury room after he left the courtroom. For the reasons explained below, we

affirm.[1]

1. Purcell, a homeless man who slept in his car behind the pizza restaurant in Snellville where he worked, was shot and killed in his car in the early morning hours of May 27, 2016. On the afternoon of May 28, after Purcell failed to show up at work, the police found his car abandoned on a highway exit ramp with his body in the trunk.

The evidence against Appellant, which was overwhelming, included the following. A woman who lived with Appellant's best friend testified that on the morning of May 27, she overheard

---

[1] The crimes occurred in May 2016. In August 2016, a Gwinnett County grand jury indicted Appellant and Tye Stewart for malice murder (Count 1), felony murder predicated on armed robbery (Count 2), felony murder predicated on aggravated assault (Count 3), felony murder predicated on hijacking a motor vehicle (Count 4), armed robbery (Count 5), aggravated assault (Count 6), and hijacking a motor vehicle (Count 7), and indicted only Appellant for possession of a firearm by a first offender probationer (Count 8). Appellant filed a motion to sever his case from Stewart's case, which the trial court granted. After a trial from April 16 to 20, 2018, the jury found him guilty of Counts 1, 2, 3, 5, and 6. The trial court entered a directed verdict of acquittal on Counts 4 and 7; Count 8 was nolle prossed. The trial court sentenced Appellant to serve life in prison without the possibility of parole on Count 1 and life in prison on Count 5, to be served consecutively to Count 1. The remaining counts were merged into Count 1. Appellant filed a timely motion for new trial in April 2018, which he amended with new counsel in May 2019 and again in April 2021. After a hearing, the trial court denied the motion in June 2021. Appellant then filed a timely notice of appeal, and the case was docketed to the term of this Court beginning in December 2021 and submitted for decision on the briefs.

Appellant tell his friend that, when attempting to rob a man who was sleeping in his car the night before, Appellant shot and killed the man, then stole his car, cell phone, and a few dollars. The next morning, May 28, the woman watched Appellant clean out Purcell's car in her driveway – seeing Purcell's name on mail removed from the glove compartment – and overheard Appellant tell his friend that the body of the man he shot was in the trunk. She also heard Appellant use Purcell's cell phone to call Purcell "off of work" at the pizza restaurant.

A neighbor who lived across from Appellant testified that on the morning of May 28, he saw Appellant scrubbing the back seat of Purcell's car and taking a basket of clothes out of the car. The basket, which was later found during a search of Appellant's house, contained a comforter with a bullet hole and a stain that tested positive for Purcell's blood, Purcell's driver's license, and several t-shirts from the restaurant where Purcell worked. Eleven fingerprints were found on Purcell's car, nine of which matched Appellant. Surveillance video recordings showed Appellant near

3

where the murder occurred and where the car was abandoned at the relevant times, and a video recording from a Kroger store showed that Appellant and his friend Tye Stewart were in the store on the afternoon of May 28 when an ecoATM[2] recorded Stewart selling Purcell's cell phone.

On May 29, officers arrested Appellant in the woods behind his friend's house after a brief chase. They later found a gun near where he was arrested, which ballistics testing confirmed was the murder weapon. Appellant was interviewed after his arrest. He gave multiple stories, but ultimately confessed that he shot and killed Purcell, then stole Purcell's car and a few dollars, before later abandoning the car on the highway exit ramp.[3] A review of Purcell's, Stewart's, and Appellant's cell phones showed that the default email on Purcell's phone was changed to Appellant's email address after

---

[2] An ecoATM is a kiosk where a person can turn in small electronic devices, such as cell phones, in exchange for cash. The ecoATM takes a picture of the person turning in a device and his driver's license during the transaction.

[3] In his final story, Appellant claimed that after he woke up Purcell, who was sleeping in the car, Purcell grabbed a pocket knife from the glove compartment and reached to grab Appellant's gun; Appellant then slapped away Purcell's hand before backing up a few feet and shooting Purcell several times. No knife was found during the investigation.

the murder, Purcell's phone sent a number of text messages to Stewart's phone the next afternoon, and Appellant's phone sent numerous text messages referring to the crimes.

2. Appellant contends first that the counts of felony murder and aggravated assault, which the trial court merged for sentencing purposes, should instead be vacated. The State correctly concedes that the counts of felony murder should have been vacated rather than merged. See *Manner v. State*, 302 Ga. 877, 890-891 (808 SE2d 681) (2017) ("Because the verdicts for malice murder and felony murder involved the same victim, the felony murder verdicts are vacated by operation of law."). But while "the trial court's nomenclature was incorrect, the error does not affect [Appellant]'s sentence," so "there is no sentencing error to correct." Id. at 891. And the aggravated assault count was properly merged into the malice murder conviction. See id. ("The court properly merged the aggravated assault [count] into the malice murder verdict, as those two counts of the indictment were both premised on the act of shooting [the victim]."). Thus, this enumeration fails.

3. Appellant next raises multiple claims that his trial counsel provided ineffective assistance. To succeed on these claims, Appellant must show that his counsel's performance was professionally deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish that counsel's performance was deficient, "Appellant must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *Davis v. State*, 299 Ga. 180, 182-183 (787 SE2d 221) (2016).

> This is no easy showing, as the law recognizes a "strong presumption" that counsel performed reasonably, and Appellant bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course."

Id. at 183 (citations omitted). To prove prejudice, Appellant must demonstrate that there is a reasonable probability that, but for

6

counsel's deficiency, the result of the trial would have been different. See id. (citing *Strickland*, 466 U.S. at 694). If Appellant fails to make a sufficient showing on one part of the *Strickland* test, we need not address the other part. See id. As we will explain, Appellant has not established that his trial counsel provided ineffective assistance.

(a) *Failure to give an opening statement.*

Appellant's first claim consists of a single sentence in his brief: "Trial counsel failed to even give an opening statement." This claim was not preserved for appellate review, because Appellant failed to raise it in his amended motion for new trial, at which time he was represented by new counsel. See *Moore v. State*, 311 Ga. 506, 513 (858 SE2d 676) (2021). In any event, trial counsel explained at the motion-for-new-trial hearing that he had difficulty formulating a defense theory due to the State's strong evidence and Appellant's changing story. It was not unreasonable for counsel to waive his opening statement to allow him to tailor his defense and arguments to the evidence presented. See *Lawrence v. State*, 286 Ga. 533, 534 (690 SE2d 801) (2010) (holding that trial counsel's decision not to

7

give an opening statement in order to "leave the door open" to pursue whatever defense strategy would be most advantageous after hearing the State's evidence was "a reasonable strategic decision [that] does not amount to ineffective assistance").

(b) *Failure to object to surveillance recordings.*

Appellant contends that his trial counsel was ineffective for failing to object to the admission of surveillance video recordings from a Shell gas station, which placed Appellant near where Purcell's car was abandoned, and the images and transaction recorded by the ecoATM in the Kroger store during the sale of Purcell's cell phone. Appellant argues that the recordings were not properly authenticated because the witnesses through which they were admitted – a computer forensics investigator with the district attorney's office for the gas station videos and John Cleland, the lead detective on the case, for the ecoATM images and transaction record – lacked personal knowledge of the proper functioning of the security camera system and the ecoATM.

But even assuming that the State failed to establish a proper

foundation for these exhibits,

> [Appellant]'s claim of ineffective assistance fails because he does not argue, much less demonstrate, that the State could not have provided additional foundational support for the admission of the [exhibits] if his counsel had objected. And as this Court previously held, "refraining from objecting to foundational matters that can be readily cured is not an unreasonable strategy."

*Vivian v. State*, 312 Ga. 268, 273 (862 SE2d 138) (2021) (citation omitted). See also *Hayes v. State*, 298 Ga. 98, 105 (779 SE2d 609) (2015) ("[Appellant] did not produce any evidence that the witness who was questioned about the exhibit would have been unable to correct any deficiency in the foundation respecting the [exhibit], or that another witness could not be readily procured to do so, and thus fails to establish either prong of the required test for ineffective assistance of counsel."). Thus, Appellant has failed to show that trial counsel acted deficiently by failing to object to the gas station surveillance videos and ecoATM images and transaction record on foundation grounds.[4]

---

[4] Appellant also asserts that his trial counsel should have objected to Detective Cleland's testimony about the ecoATM images and record as a

(c) *Failure to object to the lead detective's restating testimony of prior witnesses.*

Appellant argues that his trial counsel was ineffective for failing to object when Detective Cleland restated the testimony of prior witnesses. Appellant asserts that Detective Cleland testified about the opinions of the medical examiner, including the cause and type of Purcell's injuries; where Appellant and Stewart lived; statements of the woman who lived with Appellant's friend; multiple witnesses identifying Appellant as possessing the murder weapon; canine tracking; and the timing of Purcell's death.

At the motion-for-new-trial hearing, appellate counsel specifically questioned trial counsel only about why he did not object to Detective Cleland's testimony regarding the possession of the

---

violation of the right to confront witnesses guaranteed by the federal and state constitutions, but none of that information was testimonial, so such an objection would have been meritless. See *Allen v. State*, 300 Ga. 500, 504 (796 SE2d 708) (2017) (noting that an out-of-court statement is subject to a Confrontation Clause challenge only if the statement is "testimonial," meaning that "its primary purpose was to establish evidence for use in a future prosecution"); *Hampton v. State*, 282 Ga. 490, 492 (651 SE2d 698) (2007) ("Trial counsel's performance was not deficient merely because he chose to abstain from raising meritless objections, and his failure to raise meritless objections was, by definition, non-prejudicial.").

10

murder weapon. Trial counsel explained: "If my client says that he had the gun in his hand in the video [of the police interview], and then the detective says my client said he has the gun in his hand, do I object to that? [The jury] just heard that." Trial counsel also explained more generally that he chose not to object to the officer's "summarizing all the points that the other witnesses have already testified to."

As trial counsel indicated, portions of Detective Cleland's testimony summarized what the jury had already heard from other witnesses. Regarding possession of the murder weapon, for example, the jury had already heard Appellant admit in his police interview that he shot Purcell, along with evidence that the gun he used was later found in the woods near where Appellant had been apprehended and testimony from another witness who described Appellant's prior possession of such a purple and black handgun. Putting aside whether any particular objections might have been sustained, trial counsel did not perform deficiently by deciding not to object to Detective Cleland's testimony because there was "a

11

significant volume of evidence already presented to the jury without objection" regarding the same evidence. *Sawyer v. State*, 308 Ga. 375, 384 (839 SE2d 582) (2020). See also *Koonce v. State*, 305 Ga. 671, 676 (827 SE2d 633) (2019) ("Trial counsel was not deficient in failing to object to the cumulative testimony of [the lead detective] on these matters [regarding the results of her investigation].").

(d) *Failure to object to the lead detective's testifying to the ultimate issue.*

Appellant briefly contends that his trial counsel was ineffective for failing to object to Detective Cleland's repeatedly testifying that Purcell was "murdered," which allowed Detective Cleland to "determine credibility" and "testify to the ultimate issue." But Appellant does not identify whose credibility Detective Cleland supposedly determined. And the current Evidence Code provides that "testimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact," except for "an opinion or inference as to whether the accused did or did not have

the mental state or condition constituting an element of the crime charged or of a defense thereto," OCGA § 24-7-704, an issue that Detective Cleland did not address. Moreover, trial counsel explained that he did not object to Detective Cleland's referring to Purcell's death as a "murder," rather than a "homicide," because "for the jury, murder and homicide are exactly the same thing. They know that they're going to have to make a determination about that." Trial counsel's decision not to object on this point was not patently unreasonable, nor has Appellant shown that it caused prejudice. See *Clark v. State*, 300 Ga. 899, 902 (799 SE2d 200) (2017).

(e) *Failure to object to jury charges.*

Finally, Appellant argues that his trial counsel was ineffective for failing to object to the trial court's jury instruction on general intent and for failing to request that the court instruct the jury on subsection (f) of the pattern charge for general justification. We disagree.

At the request of trial counsel, the court gave the jury the following general intent instruction, which tracks the pattern jury

13

charge: "Criminal intent does not mean an intention to violate the law or to violate a penal statute but means simply the intention to commit the act that is prohibited by a statute." See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.41.10 (2007). Appellant, citing *Downey v. State*, 298 Ga. 568 (783 SE2d 622) (2016), argues that general intent was not pertinent to this case because the State's theory was that he was the perpetrator of, rather than an accomplice to, the crimes. But the general intent instruction was pertinent to the counts involving aggravated assault with a deadly weapon. See *Guyse v. State*, 286 Ga. 574, 577 (690 SE2d 406) (2010) (noting that assaults with the statutory aggravating factors of intent to rob, rape, or murder are specific intent crimes, but assault with the aggravating factor of use of a deadly weapon is a general intent crime). Moreover, the court gave specific intent instructions for the two counts of which Appellant was convicted, so the jury knew general intent was not enough to prove malice murder or armed robbery. The trial court did not err in giving the general intent charge, and trial counsel did not perform deficiently by not

14

making a meritless objection to that instruction. See *Hampton v. State*, 282 Ga. 490, 492 (651 SE2d 698) (2007).

Trial counsel also requested that the court instruct the jury on "Justification; Use of Force in Defense of Self or Others." See Suggested Pattern Jury Instructions, Vol II: Criminal Cases § 3.10.10 (2007). See also OCGA § 16-3-21. The court did so. Trial counsel did not request, and the court did not give, subsection (f) of the pattern charge for "Justification; Generally," which says that a justification defense can be claimed "in all other instances based on similar reason and justice as those enumerated in this charge." Id. § 3.01.10. See also OCGA § 16-3-20 (6).[5] Appellant asserts that a

---

[5] OCGA § 16-3-20 provides:
The fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct. The defense of justification can be claimed:
(1) When the person's conduct is justified under Code Section 16-3-21, 16-3-23, 16-3-24, 16-3-25, or 16-3-26;
(2) When the person's conduct is in reasonable fulfillment of his duties as a government officer or employee;
(3) When the person's conduct is the reasonable discipline of a minor by his parent or a person in loco parentis;
(4) When the person's conduct is reasonable and is performed in the course of making a lawful arrest;
(5) When the person's conduct is justified for any other reason

15

subsection (f) instruction was needed because the perpetrator of an armed robbery cannot claim justification in response to the victim's actions. See OCGA § 16-3-21 (b) (2).[6]

Appellant cites no authority to support his contention that a subsection (f) instruction was supported by the evidence in this case or can be used to circumvent the limitation on self-defense justification set forth in OCGA § 16-3-21 (b) (2). Cf. *Dugger v. State*, 297 Ga. 120, 126 (772 SE2d 695) (2015) ("[A]n instruction under OCGA § 16-3-20 (6) is appropriate only if the defendant's conduct is not encompassed by one of the specifically enumerated circumstances for claiming a defense of justification, but still might be justified because it 'stand[s] upon the same footing of reason and justice as those enumerated.' In this case, Appellant claimed that he shot [the victim] in self-defense, which is a well-established and

---

under the laws of this state, including as provided in Code Section 51-1-29; or
(6) In all other instances which stand upon the same footing of reason and justice as those enumerated in this article.

[6] OCGA § 16-3-21 (b) (2) says that "[a] person is not justified in using force under the circumstances specified in subsection (a) of this Code section if he . . . [i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony."

expressly enumerated justification defense and one on which the court adequately instructed the jury. Appellant offered no other theory of justification. Accordingly, the trial court properly declined to give Appellant's requested instruction on OCGA § 16-3-20 (6)." (citations omitted)). Trial counsel did not perform deficiently by not seeking to make new law. See *Swann v. State*, 310 Ga. 174, 179 (850 SE2d 137) (2020) ("[I]t was not professionally deficient for counsel to either fail to predict the future or to seek to create new law.").

(f) *Cumulative prejudice.*

Appellant contends that his trial counsel's alleged errors cumulatively amounted to a constructive denial of counsel. See *United States v. Cronic*, 466 U.S. 648, 659 (104 SCt 2039, 80 LE2d 657) (1984). But *Strickland*'s actual-prejudice test is the appropriate standard to evaluate the claims of ineffective assistance of counsel that Appellant presents. See *Wainwright v. State*, 305 Ga. 63, 68 (823 SE2d 749) (2019). Appellant also argues that, taken together, his trial counsel's alleged errors deprived him of a fair trial, citing *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020). But Appellant has

failed to establish even one instance of deficient performance, so he cannot show cumulative prejudice. See *Scott v. State*, 309 Ga. 764, 771 (848 SE2d 448) (2020) ("Assessing cumulative prejudice is necessary only when multiple errors have been shown, and [the appellant] has not established even one instance in which trial counsel was deficient.").

4. Appellant claims that the trial court violated his constitutional rights to a trial by jury and to be present during trial when he was not in the courtroom during a discussion between the court, his counsel, and the prosecutor regarding which exhibits would be delivered to the jury room, resulting in some exhibits remaining in the courtroom. We see no such violation.

(a) After the jury was charged and sent to the jury room for deliberations, the trial court announced: "All right. If y'all will get your evidence ready." Appellant was then removed from the courtroom, while the attorneys remained to determine which exhibits would be delivered to the jury room. The court noted that if a sealed brown bag of evidence needed to be opened, that should

18

occur in the courtroom because the court did not want scissors in the jury room. The prosecutor requested that no biohazard evidence be delivered to the jury room.

As the prosecutor and Appellant's counsel worked to sort through the exhibits, the following exchange occurred:

> [DEFENSE COUNSEL]: The firearm is going in the back; right?
> [PROSECUTOR]: Firearm pieces. Deputies, what's your – I don't like firearm pieces to go back with the jury. If they want to examine firearm pieces, whether it be bullets, shell casings, they can come in here. Okay.
> THE COURT: Yes.
> [DEFENSE COUNSEL]: But the firearm is going back?
> [PROSECUTOR]: No.
> THE COURT: No.
> [PROSECUTOR]: The firearm stays in here.
> [DEFENSE COUNSEL]: Okay.
> THE COURT: That's not even a question.
> [PROSECUTOR]: There is a projectile as well. We'll put that aside. Bullet and test fires all stay in here.
> [DEFENSE COUNSEL]: I'm just trying to figure out if we know where everything is.

The prosecutor and Appellant's counsel ultimately agreed that the gun, all gun parts and live rounds, and all unopened brown evidence bags would remain in the courtroom for the jury to view if they wished. The jury deliberated for less than 30 minutes, without

19

asking the court about any exhibits, before returning guilty verdicts.

(b) Appellant argues that his right to a trial by jury was violated when the jury was allowed to deliberate without all of the evidence in the jury room. Appellant asserts that his counsel made "repeated request[s] for the firearm to go back with the jury for deliberation, [but] the trial court refused." That is not what happened. Appellant's counsel merely asked *whether* the firearm was going to the jury room, explaining that he was "just trying to figure out if we knew where everything is." And ultimately the prosecutor and Appellant's counsel agreed on which exhibits would be delivered to the jury room. Because Appellant's counsel did not object to keeping the firearm and certain other exhibits in the courtroom, and indeed agreed on which exhibits would be sent to the jury room, this claim was not preserved for appellate review. See *Compton v. State*, 281 Ga. 45, 46 (635 SE2d 766) (2006).[7]

(c) Appellant argues that his state constitutional right to be

---

[7] Appellant raises no claim of ineffective assistance of trial counsel related to this issue.

present during trial proceedings was violated when the trial court conducted a "hearing" on exhibits going to the jury room after Appellant had been escorted out of the courtroom. This Court has held that "[t]he right to be present attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure." *Nesby v. State*, 310 Ga. 757, 758 (853 SE2d 631) (2021) (citation and punctuation omitted). In this regard, we have explained that

> a defendant's presence [during discussions between the trial court and counsel] that deal with questions of law and consist of essentially legal argument about which the defendant presumably has no knowledge, or those that deal with logistical and procedural matters, bears no relation, reasonably substantial, to the fullness of his opportunity to defend against the charge[d crimes]. The constitutional right to be present does not extend to situations where the defendant's presence would be useless, or the benefit but a shadow.

Id. at 759 (citations and punctuation omitted).

Contrary to Appellant's suggestion in his brief here, the discussion between the trial court and counsel regarding which exhibits should be delivered to the jury room was not a

21

"communication" between the court and the jury. Nor was it a formal hearing. The court did not suppress or preclude the jury from access to any admitted exhibits; some exhibits, such as the firearm, were simply kept in the courtroom for safety reasons. Appellant cites no authority – and we have found none – holding that the process of determining which exhibits should go to the jury room and which exhibits should remain in the courtroom is a "critical stage" of a trial, rather than a "'housekeeping matter[]'" involving legal and logistical issues. *Heywood v. State*, 292 Ga. 771, 774 (743 SE2d 12) (2013) (citation omitted). Accordingly, Appellant did not have a right to be present for the discussion, and this enumeration of error is meritless.

*Judgment affirmed. All the Justices concur.*