NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 31, 2023

S23A0281.  COPELAND v. THE STATE.

PINSON, Justice.

Matthew Copeland was convicted of felony murder and related crimes in connection with the shooting death of Carlos Glenn.[1] On

---

[1] The shooting occurred on December 11, 2012. In March 2013, Copeland was indicted by a Fulton County grand jury for malice murder (Count 1); two counts of felony murder (Counts 2 and 3), predicated respectively on the crimes charged in Count 4 (aggravated assault) and Count 5 (possession of a firearm by a convicted felon); and possession of a firearm during the commission of a felony (Count 6). At the conclusion of a jury trial held in September 2013, Copeland was acquitted of malice murder but found guilty on all remaining counts. On September 23, 2013, Copeland was sentenced to serve life in prison for Count 2, plus a consecutive five-year term for Count 6. The trial court merged Count 4 into Count 2 for sentencing purposes. Although the court also purported to merge Count 3 into Count 2 and then purported to merge the predicate felony charged in Count 5 into Count 3, Count 3 actually stood vacated by operation of law, see *Noel v. State*, 297 Ga. 698, 700 (2) (777 SE2d 449) (2015) (citing *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993)), and Copeland thus should have been sentenced on Count 5. See id. But "when a merger error benefits a defendant and the State fails to raise it by cross-appeal," we "exercise our discretion to correct the error upon our own initiative only in exceptional circumstances." *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017). Seeing no such circumstances here, we decline to disturb the sentence. On October 2, 2013, Copeland filed a timely motion for

appeal, Copeland contends that the evidence was constitutionally insufficient to support his convictions and that his trial counsel rendered constitutionally ineffective assistance. But the evidence was sufficient: the only disputed question was whether the shooting was justified, and the jury was entitled to discredit Copeland's testimony that he shot Glenn in self-defense. And, although trial counsel admitted he relied on outdated precedent in seeking the admission of evidence about Glenn's criminal convictions, Copeland has failed to establish that such evidence would have been admissible even under the applicable standard, so he has not shown the prejudice necessary to prevail on his claim of ineffective assistance. We therefore affirm his convictions and sentence.

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed as follows. On the day of the shooting, Copeland went to Underground Atlanta with $400 in cash and

new trial, which he amended through new counsel on October 30, 2019. After a hearing, the trial court denied the motion on October 3, 2022. On that same day, Copeland filed a notice of appeal. The appeal was docketed to the term of this Court beginning in December 2022 and was thereafter submitted for a decision on the briefs.

bought $10 worth of marijuana from Jamontae Strozier. Strozier noticed that Copeland had a gun with a brown handle at his side, concealed under his shirt.

At some point later, Copeland met up with his friend Mario Clifton and another friend identified only as Pierre. As they were about to leave the mall, they ran into Glenn and Glenn's friend Shatel Fowle. Copeland had known Glenn for about ten years, and the two had been on rocky terms since several years earlier when they were in jail together. Copeland and Glenn began arguing and tussling.

As the men left the mall, their altercation continued. Once outside, they walked ahead of the other men towards the nearby MARTA train station. Just after they rounded the corner and out of the other men's sight, two gunshots rang out. Glenn was shot in the forearm and the torso, and the shot to the torso was fatal. Copeland ran from the scene.

Later that evening, Copeland called Clifton and said he had told Glenn to leave him alone and that he "didn't want to fight." A

few days after the shooting, Copeland ran into Strozier and told him that he "didn't . . . mean to shoot anybody."

Although security cameras captured video footage of the men walking inside the mall before the shooting, there was no footage of the shooting, and no one came forward as an eyewitness to the actual shooting.

Investigators identified Copeland as a suspect after speaking with witnesses and tipsters. Six days after the shooting, an Atlanta police officer spotted Copeland's car and conducted a traffic stop. Copeland initially gave a false name, and he was ultimately arrested for driving without a valid license. Detectives later questioned Copeland about the murder, and he denied any involvement in or knowledge about the shooting, even after the detectives told him about the video footage of him with Glenn just before the shooting and noted that his name had "come up" in the investigation.

According to the GBI firearms examiner, the bullet removed from Glenn's body was a .38-caliber lead bullet. The clothing removed from Glenn's body was found to have "very few loose

4

particles" of gunpowder, indicating that the gun was fired from a distance of a few feet away.[2] Clifton testified that Copeland owned a silver .38-caliber gun with a brown handle.

Copeland gave testimony in his own defense at trial that was consistent with the defense's theory that Glenn was a bully who instigated the fatal altercation after Copeland refused to give him money. Copeland testified that, throughout their acquaintance, he and Glenn would often "get into it," and he said he had seen Glenn fight "numerous" other people in the past. On the day of the shooting, Copeland testified, he encountered Glenn more than once while at Underground. The first time, Glenn asked him for money, and he refused and walked away. Later, after meeting up with Clifton and Pierre, Copeland again ran into Glenn, who began taunting and harassing him and then "grabbed my jacket and like pulled me up"; Copeland told Glenn to leave him alone and went outside to smoke a cigarette. When Copeland and his companions

---

[2] According to the firearms examiner, gunpowder particles typically "stop depositing" when the firearm is fired from "around three-and-a-half to five-and-a-half feet" from the target.

went back into the mall, Glenn resumed his insults and provocations, and Copeland continued trying to rebuff him. The men eventually left the mall, walking past the patio of a bar where associates of Glenn were gathered, and Glenn handed his coat and hat to Fowle and told him to "fall back, I got this." As they headed toward the train station, Glenn hit Copeland twice; Copeland stumbled, and as Glenn raised his arm to swing again, Copeland fired his gun. Copeland testified that he shot Glenn "to get him off me," that he had seen Glenn beat up "numerous folk" in the past, and that he feared for his life and fired his gun as a last resort. When asked why he had not given this account to the detectives, he said he had been scared and did not trust them. Copeland admitted to being a convicted felon.

Evidence was elicited from various witnesses about Glenn's penchant for fighting and possible gang affiliation. Strozier described Glenn as a "good fighter" who was "nice with his hands" and admitted that he had told the lead detective that there were "nothing but Bloods" at Glenn's funeral. A mall security officer

6

testified that people he believed were Glenn's relatives, who frequented the mall, were members of a local gang and that Glenn "was not supposed to be on the [mall] property" at the time of the shooting. Copeland testified that several of Glenn's associates at the bar patio that evening were members of the Bloods or a different local gang.

2. Copeland contends that the evidence was insufficient to support his convictions. When assessing a challenge to the sufficiency of the evidence as a matter of constitutional due process, the evidence presented at trial is viewed in the light most favorable to the verdicts to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of all the crimes of which he was convicted. See *Jones v. State*, 304 Ga. 594, 598 (2) (820 SE2d 696) (2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LEd2d 560) (1979)). In making this determination, we do not evaluate witness credibility, resolve inconsistencies in the evidence, or assess the weight of the evidence; these tasks are left to the sole discretion of the jury. See *Walker v.*

*State*, 296 Ga. 161, 163 (1) (766 SE2d 28) (2014). The jury's verdicts will be upheld as long as some competent evidence, even if contradicted, supports each fact necessary to make out the State's case. See *Jones*, 304 Ga. at 598 (2).

Here, Copeland does not dispute that he shot and killed Glenn or that he was a convicted felon at the time he did so. Rather, he contends that the shooting was committed in self-defense. "[A] person is justified in using force which is intended or likely to cause death or great bodily harm only if he . . . reasonably believes that such force is necessary to prevent death or great bodily injury to himself . . . or to prevent the commission of a forcible felony." OCGA § 16-3-21 (a). Although the State bears the burden to disprove a defendant's self-defense claim, the jury decides whether this burden has been met, and it is free to disbelieve the defendant's testimony. See *Huff v. State*, 315 Ga. 558, 562-563 (1) (883 SE2d 773) (2023).

The evidence here authorized the jury to reject Copeland's claim that he shot Glenn because he reasonably feared for his life. See *Huff*, 315 Ga. at 562-563 (1). Given Copeland's admitted lies to

8

investigators and the inconsistency between the forensic evidence—indicating his gun was fired from more than three feet away—and Copeland's claim that he fired as Glenn was about to strike him, the jury could have disbelieved his claim that he fired out of fear rather than anger. See id. Or the jury could have concluded that what fear Copeland did feel in the situation did not justify the use of a gun. See *Nelson v. State*, 283 Ga. 119, 120 (1) (657 SE2d 201) (2008) (jury was authorized to reject self-defense claim where it concluded that appellant had used excessive force by shooting the victim after being punched). And the evidence was otherwise sufficient to support Copeland's convictions. See *Walker v. State*, 312 Ga. 232, 235-236 (1) (862 SE2d 285) (2021) (because the jury was authorized to disbelieve the defendant's self-defense claim, the evidence was sufficient to support felony-murder and firearm-possession convictions).[3]

---

[3] It is not clear that Copeland would have been entitled to claim self-defense in the first place. Justification is generally not available as a defense to someone who commits a crime while otherwise engaged in the commission of a felony, see OCGA § 16-3-21 (b) (2), and here, there was undisputed evidence that Copeland was carrying a gun on the day of the shooting, which—because of his status as a convicted felon—was a felony. See OCGA § 16-11-

3. Copeland also contends that his trial counsel rendered ineffective assistance by failing to present evidence of Glenn's criminal convictions to the jury. To succeed on a claim of ineffective assistance, a defendant must establish both that his counsel's performance was deficient and that he was prejudiced as a result of that deficient performance. See *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984)).

To prove deficient performance, a defendant must establish that counsel "performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing

131 (b). And although our precedent at the time recognized an exception to the statutory bar against claiming justification "[w]here, upon a sudden emergency, one suddenly acquires actual possession of a pistol for the purpose of defending himself," *Cauley v. State*, 260 Ga. 324, 326 (2) (c) (393 SE2d 246) (1990), the evidence here seems not to support such an exception. This issue does not appear to have been raised or considered at trial so we do not decide it. But nothing in this opinion should be read to undermine existing law— which, we note, has changed since the trial in this case—governing the circumstances under which justification may be barred for those violating gun possession laws. See OCGA § 16-11-138 ("Defense of self or others . . . shall be an absolute defense to any violation under this part."); *Johnson v. State*, 308 Ga. 141 (839 SE2d 521) (2020) (examining the effect of OCGA § 16-11-138 on OCGA § 16-3-21 (b) (2)).

10

professional norms." *Washington*, 313 Ga. at 773 (3) (citation and punctuation omitted). To overcome the "strong presumption" that counsel performed reasonably, the defendant must show that "no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." Id. (citation and punctuation omitted). To prove prejudice, a defendant must establish that there is a "reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." Id. A reasonable probability is a probability "sufficient to undermine confidence in the outcome" of the trial. *Neal v. State*, 313 Ga. 746, 751 (3) (873 SE2d 209) (2022) (citation and punctuation omitted). If a defendant fails to make a sufficient showing on one part of the *Strickland* test, we need not address the other part. *Washington*, 313 Ga. at 773 (3).

In reviewing a trial court's ruling on an ineffective-assistance claim, we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the relevant legal principles to the facts. See

11

*Sullivan v. State*, 301 Ga. 37, 40 (2) (799 SE2d 163) (2017).

(a) Before trial, Copeland's trial counsel moved for leave to introduce evidence of Glenn's prior criminal history, which included three separate judgments of conviction for robbery by intimidation; possession of a firearm by a convicted felon and obstruction of a law enforcement officer; and robbery and aggravated assault arising from a carjacking. At a pretrial hearing, counsel argued that the prior crimes were relevant to establishing Copeland's claim of self-defense. The State argued that the first and second crimes were not crimes of violence and thus not relevant to the self-defense claim, and that there was no evidence that Copeland had knowledge of the carjacking incident, which would be required for the evidence of any of the crimes to be admissible under the newly enacted OCGA § 24-4-404 (a). Trial counsel responded that he "did not know the new [evidence] code in terms of that situation" and was given time to research the issue during a recess. After the recess, counsel stated that he "could not find that particular statute" in the court's law library, but noted that he had found "the *Hodges* case that does

speak to *Chandler* . . . as the main authority" on this issue.[4] The State pointed out that the rule in *Chandler* was no longer good law, because "the whole Evidence Code changed on January 1, 2013," and the trial court denied the motion, stating it would revisit the issue if counsel later offered additional authority or proffered evidence of Copeland's knowledge of any of Glenn's alleged prior bad acts. Counsel did not seek to revisit the issue, and thus the jury was never presented with any evidence of Glenn's prior crimes.

At the motion-for-new-trial hearing, trial counsel testified that the defense strategy had been to show that "Mr. Copeland was confronted by a bully, and he defended himself against the bully." He testified further that he believed his performance at trial had been deficient due to his lack of knowledge of the newly-enacted Evidence Code, and that this had prejudiced Copeland's ability to

---

[4] See *State v. Hodges*, 291 Ga. 413, 415 (728 SE2d 582) (2012) (citing, as the seminal case on victim-prior-acts evidence, *Chandler v. State*, 261 Ga. 402, 407-408 (3) (b), (c) (405 SE2d 669) (1991) (announcing rule that "evidence of specific acts of violence by a victim against third persons shall be admissible where the defendant claims justification" and imposing procedures governing the introduction of such evidence)).

prove Copeland's claim of self-defense. In rejecting Copeland's ineffectiveness claim, the trial court made no express factual findings and summarily concluded that Copeland had shown neither deficient performance nor prejudice.

(b) Even assuming trial counsel rendered deficient performance, Copeland has failed to establish prejudice because he cannot show that the evidence of Glenn's past convictions could have been admitted.

Under the current Evidence Code, which governed Copeland's 2013 trial,[5] an accused may offer "evidence of a pertinent trait of character of the alleged victim," "for the purpose of proving action in conformity therewith," OCGA § 24-4-404 (a) (2), but that evidence is generally limited to "testimony as to reputation or by testimony in the form of an opinion," OCGA § 24-4-405 (a). Evidence of "specific instances" of a victim's conduct is admissible for this purpose only when the character trait "is an essential element of a charge, claim,

---

[5] See Ga. L. 2011, p. 99, 214, § 101 (2013 Evidence Code made effective as to all trials "commenced on or after" January 1, 2013).

14

or defense." OCGA § 24-4-405 (b). See *Mohamud v. State*, 297 Ga. 532, 536 (3) (773 SE2d 755) (2015) (construing OCGA § 24-4-405 to mean that "as a general rule, character evidence of a victim is limited to reputation or opinion, *not* specific bad acts") (emphasis in original); see also *United States v. Gulley*, 526 F3d 809, 818-819 (5th Cir. 2008) (recognizing that "the plain language of federal Rule 405 (b) limits the use of specific instances of conduct to prove essential elements of a charge or defense" and thus that the victim's prior violent acts were not admissible in support of the defendant's self-defense claim); *United States v. Gregg*, 451 F3d 930, 933-935 (8th Cir. 2006) (same).[6]

Specific instances of a victim's past conduct may also be admitted, not to show the victim's action in conformity therewith, but rather "to show the defendant's state of mind and the reasonableness of the defendant's use of force." *United States v.*

---

[6] "OCGA §§ 24-4-404 (a) and 405 closely track their counterparts in the Federal Rules of Evidence, so we look to federal appellate decisions applying these federal rules for guidance in interpreting the Georgia statutes." *Strong v. State*, 309 Ga. 295, 314 (3) (845 SE2d 653) (2020). At the time of Copeland's trial, no Georgia appellate decisions had construed these provisions.

*Bordeaux*, 570 F3d 1041, 1049 (8th Cir. 2009). Because such evidence is offered as proof of the defendant's state of mind at the time of the charged crime, it is admissible only if there is proof that the defendant actually knew about the victim's prior acts at that time. See id. at 1050-1051 (affirming exclusion of evidence of victim's prior acts of which defendant had no knowledge); *United States v. Saenz*, 179 F3d 686, 688-689 (9th Cir. 1999) (explaining that prohibition on victim-prior-acts evidence "does *not* apply when a defendant seeks to introduce evidence *that he knew of* a victim's other acts to show the *defendant's* state of mind) (emphasis in original).[7]

Thus, here, evidence of Glenn's prior crimes would not have been admissible to prove that Glenn had a violent or non-law-abiding character. It would only have been admissible—and even then, only potentially—to show Copeland's state of mind at the time

---

[7] See also *Griffin v. State*, 309 Ga. 860, 873 & n.14 (5) (b) (849 SE2d 191) (2020) (noting that admissibility of such evidence was still an open question under Georgia law but that in any event appellant had failed to show he had knowledge of victim's prior crime).

16

of the shooting and the reasonableness of his use of force. And it could have been admissible for that purpose only upon a showing that Copeland actually knew about the past crimes at the time of the shooting.

But Copeland has offered no evidence—nor even any argument—that he knew of Glenn's past crimes at the time of the shooting. Copeland asserts on appeal that "Not only was Mr. Copeland a victim of Mr. Glenn's prior acts of violence and intimidation, he was also aware of Mr. Glenn's previous acts of violence against others." But in support of this assertion, he cites only his own testimony that "I seen [Glenn] beat numerous folk before," and his affirmative response when asked on direct examination whether, "based on [his] personal experience with Mr. Glenn," Glenn "could whip" him "if he wanted to." Neither these assertions about unspecified prior acts nor anything else in the record shows that Copeland actually knew about Glenn's prior convictions. Without such evidence, he cannot show that, even had his counsel been familiar with the controlling law at the time of trial,

he would have had any chance at persuading the court to admit the evidence of Glenn's prior crimes. And short of such a showing, Copeland cannot establish a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. See *Washington*, 313 Ga. at 773 (3). So Copeland's claim of ineffective assistance fails.

*Judgment affirmed. All the Justices concur.*