NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0440
John Bailey
v.
The State

On Appeal from the Superior Court of Chatham County
No. SPCR2202175J4

Decided: April 21, 2026

McMILLIAN, Justice.

Appellant John Bailey was convicted of felony murder predicated on kidnapping in connection with the death of Melanie Steele.[1] On appeal, Bailey argues that his trial counsel rendered

---

[1] Steele died on the night of September 13, 2019. On August 3, 2022, a Chatham County grand jury indicted Bailey, Taj Gayle, Justin Path, and Marcus Wilson for various crimes related to Steele's death. As for Bailey, he was indicted for felony murder predicated on conspiracy to sell or purchase controlled substances (Count 1), conspiracy to commit the sale or purchase of controlled substances (Count 2), felony murder predicated on kidnapping (Count 3), kidnapping (Count 4), armed robbery (Count 5), possession of a firearm during commission of a felony (Count 6), and possession of a firearm by a convicted felon (Count 7). Wilson pleaded guilty before trial to reduced charges of tampering with evidence and false imprisonment; Path pleaded guilty before trial to the reduced charge of voluntary manslaughter, and both agreed to testify truthfully as part of their plea deals. The State nolle prossed Counts 5, 6, and 7 before trial. At the joint trial of Bailey and Gayle, held in September 2023, the jury found Bailey guilty of all counts against him. The trial court sentenced Bailey to serve life in prison without the possibility of parole for Count 3 felony murder predicated on kidnapping. The court merged Count 4 kidnapping into Count 3. The court purported to merge Count 2 conspiracy to

constitutionally ineffective assistance by failing to move to suppress cell phone record evidence on the ground that the search warrant and supporting application and affidavit used to obtain that evidence were defective. For the reasons that follow, we affirm.

1. In *Gayle v. State*, 322 Ga. 112 (2025), we summarized the evidence presented at Bailey and Gayle's trial as follows:

> [The evidence] showed that Steele arranged with a friend [Path] to sell drugs to John Bailey, but instead, Bailey, along with Gayle, kidnapped Steele, drove her to a desolate area, and shot her. Wilson was also present when Steele was shot.
>
> The primary evidence against Gayle [and Bailey] came from Wilson's trial testimony. According to Wilson, on the evening of September 13, 2019, Bailey called him asking him to come over to a friend's house to do Bailey a "favor." Upon arriving at the house, Wilson met up with Bailey and Gayle; Bailey said he was planning to buy some "dope" and asked

---

commit the sale or purchase of controlled substances into Count 1 felony murder based thereon, which was error because Count 1 was vacated by operation of law. See *Copeland v. State*, 316 Ga. 452, 452 n.1 (2023). But because this merger error benefits Bailey and the State has not raised it on cross-appeal, we decline to exercise our discretion to correct it under *Dixon v. State*, 302 Ga. 691, 698–99 (2017). Gayle was found not guilty of Counts 1 and 2, but guilty of Counts 3 and 4, and we affirmed his conviction in *Gayle v. State*, 322 Ga. 112 (2025).

Bailey filed a timely motion for new trial, which was amended by new counsel. Following a hearing, the trial court denied Bailey's motion for new trial, as amended, on August 14, 2025. Bailey filed a timely notice of appeal on September 14, 2025, and the case was docketed to the term of this Court beginning in December 2025 and thereafter submitted for a decision on the briefs.

Wilson to follow him in his car because he needed a ride back after the transaction. Wilson agreed, and Bailey and Gayle then walked down the street, saying they had to get the money.

Shortly afterward, Wilson saw a "young . . . lady" in a white Dodge Neon turn down the street. Afterward, Bailey returned, driving the white Neon with Gayle in the backseat, but the woman was nowhere in sight. Wilson followed the car that Bailey was driving to a road "that didn't have much street lights on it, or any buildings," and when they stopped and got out of their cars, Bailey "told [Wilson] that he was about to do something. He was about to shoot this person that was – that they had in the back of the car." Wilson testified that in response, "I pretty much was, like, what the F. And I started kinda asking him, like, why he was doin' it. And I was like begging and pleading with him to not do that because he asked me to come with him, and I didn't wanna be a part of that." Bailey and Gayle then pulled the person from the back of the car wrapped in "what looked like a bedsheet," put her on her knees, and Bailey shot her. Wilson testified that "I saw a flash, and I turned around, and I ran . . . as fast as I could" and drove away.

Wilson then called Bailey, who didn't pick up but called him back, and Wilson asked him "what the F did he just do and why did he just do that." Bailey asked Wilson to meet him back where they had first met, and Wilson did so. Wilson testified that he thought if he did not go back to meet them, "they

3

might start to think that I went to say something; so I just went back and so I could get that night over with" because "I was afraid that they'll think that I wanted to say something or that I went to tell on them," perhaps to Wilson's father, who "used to be in law enforcement."

Wilson met up with Bailey and Gayle, and Gayle got in the car with Wilson, telling him to follow Bailey, who drove the Neon. At one point early in the trip, they lost Bailey, but they then located him and followed him to Bonaventure Road, where Gayle told Wilson to stop, and Bailey left the white Neon, got into Wilson's car, and passed his gun to Gayle. Wilson testified that he was "scared" and "confused," saying, "I thought that I might have kinda – I might have been next at that point." Wilson said that he then dropped Gayle and Bailey off and "went to get some weed to try to block out what I had just saw."

Detectives investigating Steele's disappearance learned that Wilson may have been involved in her disappearance. When they first spoke to Wilson, he denied any involvement. Months later detectives interviewed Wilson again, and after he again initially denied involvement, he then told them about the murder. Wilson testified at trial that he did not originally tell detectives everything that happened and that even when he began telling them what really happened, he "told bits and pieces" because he was still "afraid" of being targeted as a "snitch" and that law enforcement "would think that I had something to do with [Steele's murder]."

Eventually, Wilson told detectives the version of events comporting with his trial testimony, summarized above, and took them to the location of the murder, where they discovered Steele's skeleton, a shell casing, and a "piece of cloth" that looked like "a shirt, pillowcase, or whatever." The medical examiner determined that Steele's cause of death was "a gunshot wound [to] the back of the torso." Detectives also discovered Steele's abandoned vehicle where Wilson said it had been dumped.

Cell phone records introduced at trial placed the phones of Gayle, Bailey, Wilson, and Steele together in the same area at the same time where and when Wilson said they had met before the murder and in the same area and at the same time where and when he said the murder occurred and where Steele's remains were found. Those records also placed the phones of Gayle, Bailey, and Wilson together in the same area and at the same time where and when Wilson said they had dumped Steele's car. Those records further showed multiple communications between the various parties, including calls between the phones of Bailey and Wilson, and a call from Gayle's phone to Bailey's phone at the time Gayle and Wilson were trying to locate where Bailey was when they lost him on the way to abandon Steele's car, all in accordance with Wilson's account of events.

322 Ga. at 112–14.

2. In his sole enumeration of error, Bailey argues that his trial counsel rendered ineffective assistance by failing to move to suppress Bailey's cell phone records on the ground that the search warrant and supporting affidavit and application for the phone records lacked probable cause and did not meet the particularity requirement.[2]

To prevail on his claim, Bailey must show both deficient performance and resulting prejudice. See *Strickland v. Washington*, 466 US 668, 687 (1984). To show deficient performance, Bailey "must demonstrate that counsel performed counsel's duties in an objectively unreasonable way, considering all of the circumstances and in the light of prevailing professional norms." *Payne v. State*, 314 Ga. 322, 328–29 (2022). "In determining whether counsel's performance was deficient, the relevant inquiry is 'whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" *Ford v. Tate*, 307 Ga. 383, 386 (2019) (quoting *Strickland*, 466 US at 690). "The law recognizes a strong presumption that counsel performed reasonably," and Bailey "bears the burden of overcoming this presumption." *Blocker v. State*, 316 Ga. 568, 578 (2023) (citation and punctuation omitted). Bailey "must show that no reasonable lawyer would have done what his

---

[2] Bailey also argues in a footnote that trial counsel was deficient for failing to request a special interrogatory to the jury on whether Wilson was an accomplice and whether corroboration of his testimony was required under OCGA § 24-14-8. Although Bailey acknowledges that "current law does not permit an allegation of ineffectiveness for failure to request something that is not required," he argues that "the current state of the law must change." We express no opinion on this issue which was not enumerated as error on appeal. See *Wallace v. State*, 303 Ga. 34, 37–38 (2018) ("[A]n appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of errors.") (citation and punctuation omitted).

6

lawyer did, or would have failed to do what his lawyer did not." Id. (citation and punctuation omitted). To establish prejudice, Bailey "must show that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." *Zayas v. State*, 319 Ga. 402, 409 (2024) (citation and punctuation omitted). If either prong is not met, we need not address the other. Id.

In his motion for new trial, Bailey argued that his trial counsel was ineffective for not moving to "suppress the cell phone information from Mr. Bailey's phone," because "the warrants were far overbroad." He later moved to supplement the record with the "Search Warrant and Affidavit signed on January 15, 2020 for the cell phone data including all location data," which he described as "the basis of the critical cell site location data used to convict Mr. Bailey and was the subject of the testimony at the Motion for New Trial hearing."

The search warrant was directed to Google, Inc. and sought information related to two Gmail accounts associated with Bailey. Specifically, the warrant sought location information and subscriber information from Google concerning the two Gmail accounts from September 13–14, 2019, the dates around which Steele disappeared. The supporting affidavit explains that after Steele's husband determined that Steele was missing, he called someone named Justin Path to look for her because Steele had said that she was going to meet her friend "JP." A detective investigating Steele's disappearance obtained a search warrant for Path's phone records and determined that Path had called Bailey during the time period leading up to Steele's murder and at least nine times after Steele's husband had called looking for her. Bailey was subsequently questioned and claimed that he was at work

7

on the night that Steele disappeared even though it was discovered that was not true. According to the affidavit, the detective took possession of Bailey's cell phone and subsequently obtained a search warrant for the phone, which led to the discovery of the two Gmail accounts associated with Bailey. The affidavit also avers that based on the affiant's training and experience, an individual's Google account "typically is in the form of a Gmail address" and that "Google collects and retains information about the user's location if the user has enabled Google to track web and app activity."

The trial court granted Bailey's motion to supplement the record with the search warrant and affidavit but denied his motion for new trial, ruling that "trial counsel was not deficient in failing to file a motion to suppress the cell phone records because review of the affidavit and application for search warrant would have yielded an adverse ruling to a filed Motion to Suppress."

On appeal, Bailey argues that his trial counsel was ineffective for not moving to suppress evidence obtained from the Google search warrant because the search warrant and supporting affidavit and application lacked probable cause and did not meet the particularity requirement.[3] However, even were we to assume that trial counsel was deficient for failing to move to suppress the evidence obtained from the Google search warrant Bailey challenges, Bailey has failed to carry his burden of showing prejudice. Importantly, it appears that three searches in this investigation produced evidence from Bailey's cell phone: the search of information related to Bailey's Google accounts, which he challenges,

---

[3] Bailey also argues, in passing, that "[t]he failure to attack the fruits of these searches amounted to an abdication of the constitutional role in the adversarial process."

8

and separate searches of Bailey's physical cell phone and of information from his cell phone carrier, Sprint/T-Mobile, neither of which he challenges, although both were referred to in the challenged Google search warrant. Bailey has not cited to where the search warrant or warrants of his physical cell phone or cell phone carrier data appears in the record.[4]

Moreover, Bailey has not shown what evidence was obtained from the challenged Google search warrant that does appear in the record or how that evidence was used either during the investigation or at trial, and our independent review of the record supports that information from the challenged search warrant was not used at trial to establish Bailey's cell phone location during the course of the crimes. The State's expert on cell phone mapping testified that he mapped the locations of all the cell phones in this case and times of their communications with one another using the call records and cell tower location data from the Sprint phone records of Bailey and the T-Mobile, Sprint, and AT&T phone records of Steele, Path, Gayle, and Wilson, without making any mention of any Google records. Because Bailey has not shown what information was obtained from the challenged search warrant or how those records were presented or used at trial, Bailey has failed to show that there is a reasonable probability that, but for counsel's alleged deficiency, the result of the trial would have been different. See *Zayas*, 319 Ga. at 409; see also *Gines v. State*, 2026 Ga. LEXIS 87, __ Ga. __, __ (2026) ("[A] conclusory allegation is insufficient to demonstrate prejudice."). Accordingly, Bailey's ineffective assistance of counsel claim fails.

---

[4] Based on our independent review, we have not been able to locate these other search warrants in the record.

*Judgment affirmed. All the Justices concur, except Warren, P.J., not participating.*