NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: January 18, 2023

S22A1302.  MONTGOMERY v. THE STATE.

BOGGS, Chief Justice.

Appellant Gregory Montgomery challenges his 2019 convictions for malice murder and other crimes in connection with the shooting death of Justuss Rogers. Appellant contends that the trial court erred in its recharge to the jury after the jury sent the court a note during deliberations and that the court should have granted him a new trial under the "thirteenth juror" standard. As explained below, the court did not err in its recharge to the jury, and Appellant's "thirteenth juror" claim is wholly without merit. Accordingly, we affirm.[1]

---

[1] The crimes occurred on October 23, 2017. On March 13, 2018, a DeKalb County grand jury indicted Appellant for malice murder, two counts of felony murder, conspiracy to commit armed robbery, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony.

1.     Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On Monday evening, October 23, 2017, Rogers drove his friend Derrick Wheeler and a woman named Lakoaia Johnson in his Camaro to a cell phone store in Morrow, Georgia. Outside the store, Johnson used her cell phone to record a video of herself with Rogers as he was counting out a large amount of cash, and she posted the video on Instagram. At the same time, she sent a message to a group chat that included Appellant and S.D., a juvenile. Members of the group told Johnson to bring

---

In the same indictment, the grand jury charged Lakoaia Johnson with two counts of felony murder, conspiracy to commit armed robbery, and aggravated assault with a deadly weapon. Johnson later entered a negotiated guilty plea to aggravated assault and was sentenced to a term of 20 years in prison with the first 15 years to be served in confinement. At a trial from February 19 to March 1, 2019, the jury found Appellant guilty of all charges. The trial court sentenced Appellant to serve life in prison without the possibility of parole for malice murder, a concurrent term of 30 years for conspiracy to commit armed robbery, and a consecutive term of five years suspended for the firearm-possession conviction; the felony murder verdicts were vacated by operation of law, and the aggravated assault count merged. On March 26, 2019, Appellant, assisted by new counsel, filed a motion for new trial, which he amended on June 1, 2020. The trial court held a hearing on the motion on May 19, 2022, corrected a scrivener's error on the Final Disposition form that constituted Appellant's judgment of conviction and sentence, and entered an order on May 31 otherwise denying the new trial motion. On June 23, Appellant filed a notice of appeal, and the case was docketed in this Court to the August 2022 term and submitted for decision on the briefs.

Rogers to a certain cul-de-sac so that they could rob him and asked if Rogers was armed; Johnson replied that she did not know.

Johnson asked Rogers to drop her off at the cul-de-sac, but he initially refused. Johnson then told Rogers that she needed to pick up her baby there, so Rogers drove her to the cul-de-sac with Wheeler in the back seat. As soon as Rogers stopped his Camaro, Johnson opened the passenger-side door. As she got out, Appellant came from behind the car, grabbed the top of the passenger-side door, pointed a black pistol into the Camaro, and opened fire, hitting Rogers four times on the right side of his body as Wheeler slid down in the back seat as far as he could to avoid getting shot. Rogers had already shifted the car into reverse, and when he pressed the gas pedal, he backed into a car that was parked behind him. Rogers managed to shift the car into drive and pull forward, but he hit another parked car, and his Camaro came to a halt.

Appellant and Johnson ran through some woods, down a hill, and through an adjacent apartment complex, where a security guard at the complex saw them. Meanwhile, back on the cul-de-sac,

3

Wheeler climbed over the front seat of the Camaro, opened the driver-side door, crawled over Rogers, and got out. Rogers told Wheeler that Rogers had been shot and asked Wheeler to help him. Wheeler tried to keep Rogers conscious, and as neighbors began to come out of their homes to see what had happened, Wheeler shouted to them to call 911. The police and emergency medical responders arrived within minutes of the shooting, and Rogers was taken to a nearby hospital, where he soon died from his injuries.

The police recovered four .40-caliber shell casings and a black bookbag from the street near the Camaro, as well as a .40-caliber bullet on the driver's seat where Rogers had been sitting. The bookbag contained, among other things, Appellant's cell phone and a gun magazine with nine .40-caliber rounds. On Appellant's cell phone, the police found pictures and a video made just hours before the shooting. One picture and the video showed Appellant pointing a pistol at the camera; another picture showed the black bookbag with a pistol inside; and the caption on the video started with the words "Big Boy 40 on me."

A little more than a week after the shooting, the police brought Johnson in for questioning, and she said that S.D. sent her the address on the cul-de-sac where she was supposed to bring Rogers. A week or so later, the police arrested S.D., who gave a statement implicating Appellant as the shooter and Johnson as the person who set up the planned robbery. Within days, the police arrested Johnson. The following month, the U.S. Marshals Service apprehended Appellant at his sister's house, where they found him hiding under a pile of clothes in a bedroom.

At trial, Johnson testified that Appellant shot Rogers, and S.D., who was not present at the shooting, testified that Appellant told S.D. that Appellant shot Rogers. The security guard from the adjacent apartment complex identified Appellant as the man he saw running with Johnson from the direction of the gunfire with a gun in his hand seconds after the shooting. The defense theory was that the State failed to prove beyond a reasonable doubt that Appellant was even present at the scene of the shooting, much less that he was the person who shot Rogers. Appellant elected not to testify but

called one defense witness, Charquita Cooper. Cooper testified that Johnson had confided in her that the father of Johnson's child shot Rogers; that Appellant was not at the cul-de-sac at the time of the shooting; and that Johnson was going to testify falsely at Appellant's trial that she saw Appellant shoot Rogers. On cross-examination, Cooper acknowledged that she and Johnson had physically fought in prison.

2. Appellant contends that the trial court erred in its recharge to the jury, because the court refused to include in the recharge language defining reasonable doubt. We see no error.

(a) Almost two hours into deliberations, the jury sent the trial court a note that said: "Does the defendant need to have pulled the trigger in order to be guilty of felony murder? Or, does the defendant just need to be party to the felony?" The court asked the parties for proposed responses. The State requested that the court recharge the jury on parties to a crime and conspiracy. Appellant agreed that the jury should be recharged on parties to a crime but disagreed that the jury should be recharged on conspiracy. However,

the court ruled for the State, explaining that the jury's note mentioned "felony murder" and that conspiracy to commit armed robbery was the underlying felony for one of the two felony murder charges against Appellant. Appellant responded that if the court was going to recharge on conspiracy for that reason, then the court also ought to recharge the jury on aggravated assault. The court agreed to do that as well, explaining that it planned to recharge the jury on parties to a crime, conspiracy, armed robbery, and aggravated assault.

Appellant said that if the court was going to recharge the jury on all those issues, the court also should repeat the jury instruction on reasonable doubt. The State objected, pointing out that the jury did not indicate in its note that it had any questions about reasonable doubt. The court again agreed with the State, commenting that the recharge needed to be responsive to the questions that the jury asked. The court observed that at that point, there appeared to be no disagreement between the parties on whether the court should recharge the jury on parties to a crime,

conspiracy, and the definitions of the two underlying felonies and said that was what the court was going to do. Appellant responded, "We would note our objection for the record, your Honor."

The court then added that it would include in the recharge the instruction on the definition of felony murder, the second and third paragraphs of which explained to the jury how its verdict should read if the jury were to find Appellant guilty beyond a reasonable doubt of malice murder or felony murder. Appellant responded that he did not have a problem with the court "doing all that" as long as the court "also give[s] a reasonable doubt" instruction. Appellant argued that "recharging them on all the things that he can be found guilty of and not recharging them on the fact that they can find him not guilty [based on reasonable doubt] is inappropriate." The court acknowledged that the second and third paragraphs of the felony murder instruction used the term "reasonable doubt" and wondered aloud whether it might be better for the court simply to reread the first paragraph of that instruction, tell the jury that conspiracy to commit armed robbery and aggravated assault are felonies, and not

recharge the jury on the definitions of conspiracy and aggravated assault. The State said that it had no objection to that course of action, but Appellant said, "I have a problem with not reading the whole thing," referring to the whole three-paragraph felony murder instruction. He further contended that "if you read the whole thing, you must give reasonable doubt."

The court responded:

> Well, that's why I don't want to read the whole thing because to your point, the second and third paragraphs under the felony murder charge, which they have already been charged on[,] to your point, give them the option to find your client, if they think the evidence supports it, guilty of malice murder or guilty of felony murder. And so to take care of your concern, I was not going to give that part of the charge.

Appellant then said, "But my concern is if you don't give reasonable doubt . . . ." The court agreed with Appellant that if it reread to the jury the second and third paragraphs of the felony murder instruction,

> then, yes, I would then need to give a reasonable doubt charge, I think. But the whole point was so as not to highlight which was your concern the fact that the jury

9

could find him guilty of malice murder and felony murder all over again.

Appellant replied, "My concern is that it is highlighted in any event and it's not balanced with a reasonable doubt instruction."

The court then said, "All right. Any objection to – I will read the whole thing then," referring to all three paragraphs of the instruction defining felony murder. The State objected, arguing that the jury had asked questions specifically about the circumstances under which a person may be found guilty of felony murder and did not indicate that it had any questions about anything else, adding, "if we are going to read reasonable doubt, I would ask that we read the whole charge again." The court rejected that suggestion. The court then offered to Appellant:

> [I]f you want me to read the entirety of felony murder defined, which includes a paragraph giving the jury the option to find your client guilty of malice murder and guilty of felony murder, I will do that. I will similarly read the burden of proof reasonable doubt charge because I don't think it's harmful. Is that what you want me to do?

Appellant replied, "Yes, your Honor." The court said, "All right. That's what I'm going to do."

10

Once the jury was back in the courtroom, the court read aloud the jury's questions and said, "Here is the response." The court then reread to the jury the instructions on parties to a crime and conspiracy, as well as all three paragraphs of the felony murder instruction. The court closed out its recharge with the following language:

> The defendant is presumed to be innocent until proven guilty. The defendant enters upon the trial of the case with a presumption of innocence in his favor. This presumption remains with the defendant until it is overcome by the State with evidence that is sufficient to convince you beyond a reasonable doubt that the defendant is guilty of the offense charged.
> No person shall be convicted of any crime unless and until and unless [sic] each element of the crime is proven beyond a reasonable doubt.
> The burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt.

The court then sent out the jury to continue deliberating.

The court asked the parties if there was anything else that the court needed to address. The State said that it had no objection to the recharge, but Appellant objected to it, stating, "I thought the

reasonable doubt instruction was what is reasonable doubt. Reasonable doubt is not an absolute doubt. I thought that part was going to be read." Appellant asked the court to bring the jury back out and read to the jury the rest of the instruction entitled "Presumption of Innocence; Burden of Proof; Reasonable Doubt."[2] The State opposed any further recharge. The court said, "We didn't talk about the exact language of exactly what you wanted to have

---

[2] The part of the instruction that the court did not repeat to the jury in the recharge said:

> There is no burden of proof upon the defendant whatsoever, and the burden never shifts to the defendant to introduce evidence or to prove innocence. When a defense is raised by the evidence, the burden is on the State to negate or disprove it beyond a reasonable doubt.
>
> However, the State is not required to prove the guilt of the accused beyond all doubt or to a mathematical certainty. A reasonable doubt means just what it says. A reasonable doubt is a doubt of a fair-minded, impartial juror honestly seeking the truth. A reasonable doubt is a doubt based upon common sense and reason. It does not mean a vague or arbitrary doubt but is a doubt for which a reason can be given, arising from a consideration of the evidence, a lack of evidence, or a conflict in the evidence.
>
> After giving consideration to all of the facts and circumstances of this case, if your minds are wavering, unsettled, or unsatisfied, then that is a doubt of the law, and you must acquit the defendant. But, if that doubt does not exist in your minds as to the guilt of the accused, then you would be authorized to convict the defendant.
>
> If the State fails to prove the defendant's guilt beyond a reasonable doubt, it would be your duty to acquit the defendant.

12

read," added that it believed that it had addressed Appellant's concerns, and noted that each juror had a written copy of the full initial charge, including the language that Appellant wanted repeated to them. Appellant noted his objection for the record.

(b) If the jury has specifically requested to be recharged on a particular issue, a trial court must recharge the jury on that issue. See *Flood v. State*, 311 Ga. 800, 806 (860 SE2d 731) (2021). Absent such a request, the need for additional jury instructions, their breadth, and their precise formulation "are left to the sound discretion of the trial court." *Barnes v. State*, 305 Ga. 18, 23 (823 SE2d 302) (2019). Here, the jury asked the court whether, in order to find Appellant guilty of felony murder, it had to find that he pulled the trigger or instead only needed to find that he was a party to the underlying felony. Nothing in the jury's questions suggested that it was confused or uncertain about the legal definition of reasonable doubt, so the trial court was not required to recharge the jury on that issue. Moreover, the trial court acted within its discretion in including in its recharge language regarding the presumption of

13

innocence, the State's burden of proof, and the requirement that the State prove every essential element of the crimes charged beyond a reasonable doubt. The court did not abuse its discretion by declining to go further by recharging the jury on the definition of reasonable doubt. See *Dozier v. State*, 306 Ga. 29, 32-33 (829 SE2d 131) (2019) ("[O]ur case law contains no general mandate requiring trial courts, when responding to a jury's request for a recharge on a particular issue, to also recharge on all principles asserted in connection with that issue.").

3.    Appellant also contends that the trial court should have granted him a new trial under the "thirteenth juror" standard.

> [E]ven when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is "contrary to . . . the principles of justice and equity," OCGA § 5-5-20, or if the verdict is "decidedly and strongly against the weight of the evidence[,]" OCGA § 5-5-21. When properly raised in a timely motion, these grounds for a new trial – commonly known as the "general grounds" – require the trial judge to exercise a "broad discretion to sit as a 'thirteenth juror.'" In exercising that discretion, the trial judge must consider some of the things that [he or she] cannot when assessing the legal sufficiency of the evidence, including

any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence.

*Hinton v. State*, 312 Ga. 258, 262 (862 SE2d 320) (2021) (citation and punctuation omitted). However, "[t]he decision to grant or refuse to grant a new trial on the general grounds is vested *solely* in the trial court." Id. (citation and punctuation omitted; emphasis added).

> Thus, '[w]hen a defendant appeals the trial court's denial of a motion for new trial, an *appellate* court does not review the merits of the general grounds.' Instead, this Court's review of [the] trial court's ruling on the general grounds is limited to sufficiency of the evidence under *Jackson v. Virginia*[, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979)].

Id. (first two alterations and emphasis in original; citation omitted).

As Appellant acknowledges, the trial court applied the "thirteenth juror" standard in denying his motion for new trial. Cf. *White v. State*, 293 Ga. 523, 525-526 (753 SE2d 115) (2013) (vacating and remanding where trial court failed to apply the "thirteenth juror" standard in denying the defendant's timely motion for new trial that properly raised the general grounds). And when properly viewed in the light most favorable to the verdicts, the evidence

15

presented at trial and summarized above in Division 1 was sufficient to authorize a rational jury to find beyond a reasonable doubt that Appellant was guilty of the crimes for which he was convicted. See *Jackson*, 443 U.S. at 319. See also OCGA § 16-2-20 (defining parties to a crime); *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)). Accordingly, this claim fails.

*Judgment affirmed. All the Justices concur.*