NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 14, 2024

S24A0405. ANDERSON v. THE STATE.

PINSON, Justice.

Clark Chandler Anderson shot and killed Kevin Murr. At trial, Anderson argued the killing was voluntary manslaughter, not murder, because he shot Murr after being seriously provoked, but the jury found Anderson guilty of malice murder. On appeal, Anderson contends that insufficient evidence supported his convictions, that the trial court should have given Anderson's requested jury instruction about voluntary manslaughter, and that his trial counsel was ineffective for failing to object to three pieces of testimony from his coworkers that, in Anderson's view, were inadmissible character evidence.

We conclude that the evidence was sufficient to support Anderson's conviction for malice murder because it showed that he

intentionally shot Murr 16 times. We further conclude that no jury instruction about voluntary manslaughter was required because the provocation that Anderson claims—Murr yelling and cursing at him and threatening to get a gun—was not enough to excite the "sudden, violent, and irresistible passion" that could warrant a jury instruction on voluntary manslaughter. And counsel was not ineffective for failing to object to the coworkers' testimony: counsel wanted the jury to hear some of the testimony because it would serve counsel's strategy of trying to evoke the jury's sympathy, and Anderson suffered no prejudice from the remaining testimony. So we affirm Anderson's convictions.

1. Anderson was convicted of malice murder and other crimes in connection with the shooting death of Murr.[1] The evidence at trial

---

[1] The shooting occurred on June 7, 2020. On October 28, 2020, a Paulding County grand jury indicted Anderson for malice murder, felony murder predicated on aggravated assault, aggravated assault of Murr, aggravated assault of Carol Anderson, and possession of a firearm during the commission of a felony. He was tried by a jury from June 6 to 8, 2022. The jury found Anderson not guilty of the aggravated assault of Carol Anderson but guilty of the remaining charges. He was sentenced to life in prison without the possibility of parole for malice murder, with a consecutive term of five years in prison for possession of a firearm during the commission of a felony. The

2

showed the following.

Anderson lived with his mother, Carol, and Carol's fiancé, Murr. Carol and Murr had been together for nine and a half years, and Carol and Anderson had moved in with Murr about a year before the shooting. Carol described Anderson and Murr's relationship as "generally good," although she acknowledged that Anderson "was a little distrustful" and that the two "were both a little back and forth sometimes."

Anderson and Murr's relationship grew more fraught a few months before the shooting. Starting around that time, Anderson described Murr to coworkers as an "evil piece of s**t" and said he hated Murr and wanted to kill him. In Anderson's text messages to a coworker from about three months before the shooting, which were read to the jury, Anderson said he would probably kill Murr "and

---

remaining counts were merged or vacated by operation of law. Anderson filed a timely motion for new trial, which he later amended through new counsel. After a hearing and supplemental briefing, the trial court denied the motion for new trial, as amended, on October 23, 2023. Anderson filed a timely notice of appeal. His case was docketed to the term of Court beginning in December 2023 and submitted for a decision on the briefs.

shoot it out with the cops," and that killing Murr would be "easier than killing [an] ISIS or Taliban solider."

On the morning of the shooting, Anderson left the house early to go to work. Murr and Carol stayed home all day. When Anderson returned home in the evening, he said he was tired and went to his room.

A little later, Murr angrily went to Anderson's closed bedroom door. He began "banging on the door," "screaming," and "yelling" at Anderson to come out and take a shower. Anderson—who had not showered for "upwards to about a month"—responded repeatedly that he would do it in the morning. During this commotion, Carol came out from the main bedroom into the hallway to see what the trouble was. Murr told her to "get the F back in there," but Carol remained in the hall.

Suddenly things grew "eerily quiet." Carol and Murr heard a clicking from inside Anderson's room, which they recognized as the sound of his gun. Ordinarily Carol and Murr would "roll [their] eyes" when they heard that clicking sound, because they knew Anderson

was just playing with the gun. But this time it "felt different . . . because of the yelling" that had just happened.

Shots rang out. Murr was hit through the closed door. Other bullets hit the wall near where Carol was standing. Murr screamed out, "GD you hit me," and ran towards the kitchen. Carol followed. Anderson emerged from his room and, in his own words, "kept shooting" at Murr until his gun was empty—16 rounds in all. Murr reached the kitchen and fell to the floor. He died soon after.

Murr had been hit five times in the chest and back. The bullets, bullet holes, and spent shell casings found around his body suggested that Anderson had fired some of those shots after Murr was on the ground. Nevertheless, Carol testified that Anderson performed CPR on Murr, to no avail, and that Anderson said, "Oh, God, what have I done, what have I done, oh, F, what have I done . . . mom, I'm sorry, mom, I'm sorry, God, I'm sorry." Carol, meanwhile, called 9-1-1.

Sheriff's deputies arrived at the scene. The first responding officer found Anderson and Carol on the front steps of the house.

Anderson's hands were covered in blood. He told the officer he had shot Murr multiple times with a handgun.

Police took Anderson to the sheriff's office. There, Anderson waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966), and gave a recorded statement, portions of which were played for the jury. In the statement, Anderson admitted that he shot Murr. He said repeatedly that he was not angry at Murr and did not lose his temper, but rather feared for himself and his mother because Murr had threatened to get his own gun. According to Anderson, when Murr was pounding on the bedroom door, Anderson "racked the slide [of his gun] as a deterrent." Despite that deterrent, Murr eventually broke through the locked door. Anderson then pushed the door closed and shot Murr through the closed door.

At least one part of Anderson's statement was undercut by other trial evidence. Although Anderson claimed that Murr had broken through the locked bedroom door, an officer testified that the door was undamaged—except for the bullet holes.

6

2. Anderson contends that the evidence at trial was not sufficient as a matter of constitutional due process to support his conviction for malice murder. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "We evaluate a due process challenge to the sufficiency of the evidence by viewing the evidence presented at trial in the light most favorable to the verdicts, and asking whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Henderson v. State*, 317 Ga. 66, 72 (2) (891 SE2d 884) (2023). "We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts." *Perkins v. State*, 313 Ga. 885, 891 (2) (a) (873 SE2d 185) (2022) (citation and punctuation omitted).

Under that standard, the evidence at Anderson's trial was sufficient to sustain his malice murder conviction. A person is guilty of malice murder if "he unlawfully and with malice aforethought, either express or implied, causes the death of another human being."

7

OCGA § 16-5-1 (a). At Anderson's trial, it was undisputed that Anderson shot Murr. Not only that, but he shot him multiple times, pursued him to the kitchen, and continued firing until the gun was empty. Although Anderson had told police that he shot Murr out of fear, he never asserted an affirmative defense of justification, asked for a jury instruction on self-defense, or otherwise claimed at trial that he shot Murr in self-defense. To the contrary, the evidence showed that in the months leading up to the shooting, Anderson had told his colleagues that he hated Murr and fantasized about killing him. Presented with that evidence and the evidence at trial and recounted in part above, a reasonable jury could find beyond a reasonable doubt Anderson killed Murr with malice aforethought. See *Neason v. State*, 317 Ga. 695, 698-699 (895 SE2d 278) (2023) (evidence sufficient to support malice murder conviction when multiple witnesses saw defendant shoot victim and defendant had motive to kill victim); *Whittaker v. State*, 317 Ga. 127, 131 (2) (891 SE2d 849) (2023) (evidence sufficient to support malice murder conviction when defendant stabbed victim 50 times and strangled

8

him, because defendant's "brutal and excessive actions . . . support[ed] the jury's finding of the requisite malice and intent").

Anderson contends on appeal that he "raised an affirmative defense" that the killing was voluntary manslaughter, rather than murder, because he "committed this crime out of a sudden, violent, and irresistible passion," and that the State failed to disprove that defense beyond a reasonable doubt. But voluntary manslaughter is a separate offense, not an affirmative defense to murder, so the State was not required to disprove it beyond a reasonable doubt. See OCGA §§ 16-3-20 to 16-3-28 (listing affirmative defenses); *Wyman v. State*, 278 Ga. 339, 340-341 (3) (602 SE2d 619) (2004) (voluntary manslaughter is not a defense to murder); cf. *Clark v. State*, 307 Ga. 537, 539-540 (1) (837 SE2d 265) (2019) ("When a defendant raises an affirmative defense that is supported by some evidence, the State has the burden of disproving that defense beyond a reasonable doubt."). And as explained in Division 4, no evidence supported a voluntary manslaughter conviction in any event.

3. Anderson also argues that this Court should reverse his

conviction under the "general grounds" in OCGA §§ 5-5-20 and 5-5-21. Those Code sections allow a trial court, on a motion for new trial, to reverse a conviction if the conviction is "contrary to evidence and the principles of justice and equity," OCGA § 5-5-20, or "decidedly and strongly against the weight of the evidence," OCGA § 5-5-21. But when we determine that the trial court has exercised its discretion under OCGA §§ 5-5-20 and 5-5-21, we do not review the merits of the general grounds on appeal. The decision whether to reverse a conviction on the general grounds is left to the sole discretion of the trial court. See, e.g., *Adams v. State*, 318 Ga. 105, 114 (2) (897 SE2d 396) (2024); *King v. State*, 316 Ga. 611, 616 (2) (889 SE2d 851) (2023); *Ridley v. State*, 315 Ga. 452, 456 (3) (883 SE2d 357) (2023); *Bundel v. State*, 308 Ga. 317, 318 (1) (840 SE2d 349) (2020); *Strother v. State*, 305 Ga. 838, 843 (3) (828 SE2d 327) (2019). Here, the trial court noted that it "ha[d] considered but decline[d] to grant a new trial under the general grounds." Absent affirmative evidence to the contrary—and there is none here—we presume that the trial court properly exercised its discretion in

10

denying a motion for new trial on the general grounds.[2] See, e.g., *Ward v. State*, 316 Ga. 295, 299 (3) (888 SE2d 75) (2023).

Separately, Anderson contends that his conviction should be reversed under OCGA § 5-5-25, which allows a court to grant a new trial "on other grounds not provided for in this Code" if the court finds that relief is required "according to the provisions of the common law and practice of the courts." But Anderson does not point to any "other grounds" or support his contention with argument or explanation. "[T]his Court is not required to scour the record for support for an appellant's arguments," *Davis v. State*, 306 Ga. 140, 144 (3) (829 SE2d 321) (2019), and we decline to do so here. So Anderson's claim on this ground also fails.

4. Anderson contends that the trial court erred by refusing to

---

[2] In the past, when evaluating a trial court's denial of a motion for new trial on the general grounds, we have sometimes reviewed the sufficiency of the evidence as a matter of constitutional due process under *Jackson*, 443 U.S. 307. See, e.g., *Montgomery v. State*, 315 Ga. 467, 474 (3) (883 SE2d 351) (2023). Many of us "question whether it is proper for this Court to import *Jackson* into an appellate review of the general grounds." *King*, 316 Ga. at 616 (2) n.8. But we need not resolve that question here, because Anderson's general-grounds claim fails in any event: the trial court exercised its discretion to deny the claim, and, as we explained above, the evidence was constitutionally sufficient to affirm Anderson's convictions. See id.

give his requested jury instruction about voluntary manslaughter. Voluntary manslaughter is the killing of another person, "under circumstances which would otherwise be murder," where the perpetrator "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). When a defendant requests a jury instruction on voluntary manslaughter, as Anderson did here, the trial court must give the instruction if there is "slight evidence" to support it—that is, if there is slight evidence that the defendant, in killing the victim, acted under a "serious provocation" that could excite a "sudden, violent, and irresistible passion" in a reasonable person. See *Mobley v. State*, 314 Ga. 38, 42 (875 SE2d 655) (2022) (citations and punctuation omitted). The existence, or not, of that "slight evidence" is a question of law. See id. at 42-43. And when, as here, a defendant properly preserves a claim that the trial court erred by refusing to instruct the jury on an applicable principle of law, that claim is reviewed de novo. See *Eubanks v. State*, 317 Ga. 563, 581 (3) (b) (894 SE2d 27)

12

(2023).

The trial court here did not err in refusing to give a voluntary manslaughter instruction because no evidence supported giving one. Anderson contends that he was seriously provoked by Murr pounding on the door, yelling and cursing at him, and threatening to get a gun. But threats and insults on their own are not enough to support a voluntary manslaughter instruction. See, e.g., *Smith v. State*, 296 Ga. 731, 737 (3) (770 SE2d 610) (2015) ("[N]either fear that someone is going to pull a gun nor fighting are the types of provocation which demand a voluntary manslaughter charge."); *Rountree v. State*, 316 Ga. 691, 694-695 (2) (889 SE2d 803) (2023) ("threatening words and racial epithets" did not amount to serious provocation, "no matter how menacing or offensive they were" to the defendant); *Hudson v. State*, 308 Ga. 443, 446 (2) (a) (841 SE2d 696) (2020) (voluntary manslaughter instruction not required where victim used crude and insulting language toward defendant, because "[t]here was no evidence whatsoever of provocation sufficient to excite the passions of a reasonable person"). Here, the

13

evidence was that Murr yelled and cursed at Anderson, told him to take a shower, and threatened to get his gun. Those threats and insults, no matter how offensive to Anderson, did not subject him to a provocation that would reduce his crime from murder to voluntary manslaughter. See *Smith*, 296 Ga. at 737 (3). The trial court thus did not err in declining to give the instruction. See *Hudson*, 308 Ga. at 446 (2) (a).

Anderson also contends the trial court was required to give a voluntary manslaughter instruction because it was his "sole defense" at trial. See *Price v. State*, 289 Ga. 459, 459-460 (2) (712 SE2d 828) (2011) ("The trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge.") (citation and punctuation omitted). But voluntary manslaughter is a distinct offense, not a defense to murder. See *Wyman*, 278 Ga. at 340-341 (3). And in any event, as discussed above, no evidence supported the charge. See *Price*, 289 Ga. at 459 (2).

5. Anderson contends that his trial counsel provided ineffective

14

assistance by failing to object to certain testimony from Anderson's coworkers. In Anderson's view, that testimony was character evidence that would have been excluded under OCGA §§ 24-4-404 (a) and 24-4-405 (a) had his counsel objected. See OCGA § 24-4-404 (a) ("[e]vidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion," subject to certain exceptions that the State did not rely on here); OCGA § 24-4-405 (a) (requiring that, whenever evidence of character is admissible, "proof shall be made by testimony as to reputation or by testimony in the form of an opinion").

(a) Anderson identifies three pieces of testimony that he says counsel should have tried to exclude. First, two of his coworkers testified that he sometimes brought guns to work. Second, the same two coworkers testified that Anderson falsely claimed to have served in the military, with one recalling that Anderson said he suffered

15

from post-traumatic stress disorder.[3] Finally, one coworker testified that while she was giving Anderson a ride home from work a few weeks before the murder, she asked if Anderson wanted to move from the back seat of her car to the front seat, and he replied, "[W]hat do you think I'm going to rape you or something?"

At the hearing on Anderson's motion for a new trial, trial counsel was asked why he did not try to exclude the coworkers' testimony about Anderson bringing guns to work or lying about military service. (He was not asked why he did not try to exclude the testimony about Anderson's comment about rape.) In response, counsel explained how the coworkers' testimony served his trial strategy of trying to gain the jury's sympathy. Counsel recalled that Anderson, in a part of his recorded interview that the jury would see, had talked about being too small in stature to join the police or the military. Counsel said he played up that idea in his opening

---

[3] The witnesses did not explicitly characterize Anderson's claims about military service as untrue, but it was (and is) undisputed that Anderson never served. The State argued in closing that it was obviously untrue that Anderson had ever served in the military, and pointed out that his mother testified that he had never had another job.

16

statement to argue that Anderson's small stature had prevented him from achieving his goals and left him frustrated. In counsel's view, the challenged testimony from Anderson's coworkers—that Anderson lied about military service and displayed guns at work— fit the same narrative. Counsel testified that he made a "strategic decision to just let it all in and give the jury the full picture of what was going on," because Anderson's "only real shot at anything" was to generate sympathy from the jury.

(b) To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was professionally deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Taylor v. State*, 315 Ga. 630, 647 (5) (b) (884 SE2d 346) (2023) (citation and punctuation omitted).

To prove deficiency, a defendant "must show that his lawyer

performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *Scott v. State*, 317 Ga. 218, 221 (2) (892 SE2d 744) (2023) (citation and punctuation omitted). This is "no easy showing," id. (citation and punctuation omitted), because the law recognizes a "strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct," *Harper v. State*, 318 Ga. 185, 192 (1) (897 SE2d 818) (2024) (citation and punctuation omitted). To overcome that presumption, the appellant must show that "no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Washington*, 313 Ga. at 773 (3) (citation and punctuation omitted). "In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Waters v. State*, 317 Ga. 822, 829 (3) (b) (896 SE2d 507) (2023) (citation and punctuation).

To show that he was prejudiced by counsel's deficient

performance, a defendant must show that, but for the deficiency, there was a "reasonable probability" that the result of the trial would have been different. See *Waters*, 317 Ga. at 829 (3) (b). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citation and punctuation omitted).

With these standards in mind, we review in turn each piece of testimony that Anderson contends his counsel should have tried to exclude.

(i) Counsel did not perform deficiently by failing to object to the coworkers' testimony about Anderson bringing guns to work and lying about military service. Counsel testified that his strategy at trial—indeed, his "only real shot at anything"—was to play on the jury's sympathy in the hope that the jury would find that Anderson acted without malice. That strategy was reasonable under the circumstances. See *Earnest v. State*, 262 Ga. 494, 496-497 (5) (422 SE2d 188) (1992) (strategy of trying to invoke the jury's sympathy is "within the range of professionally reasonable decisions"). Counsel pursued his strategy by trying to give the jury "the full picture of

19

what was going on" with Anderson. For counsel, that meant portraying Anderson as a man whose small stature prevented him from joining the police or the military, and who may have compensated for those frustrations by enacting fantasies of military service around his coworkers. The coworkers' testimony, especially layered with Anderson's own statements to police, helped complete that "full picture." So it was reasonable for counsel not to object to it. See *Jones v. State*, 300 Ga. 543, 546 (2) (a) (796 SE2d 659) (2017) (reasonable strategy not to object to evidence that "might be useful to create sympathy for the [defendants] and convince a jury that they did not act with malice").

Because counsel's decision not to object was part of a reasonable trial strategy, it fell within the "broad range of reasonable professional conduct." See *Harper*, 318 Ga. at 192 (1); *Waters*, 317 Ga. at 829 (3) (b); *Jones*, 300 Ga. at 546 (2) (a). The fact that the strategy did not carry the day does not mean it was unsound or that counsel's performance was deficient. See *Grissom v. State*, 296 Ga. 406, 412 (4) (768 SE2d 494) (2015) (counsel's strategic

decisions "must not be judged by hindsight or the ultimate result of the trial") (citation and punctuation omitted). So Anderson's claim of ineffectiveness on this ground fails.

(ii) We turn next to the coworker's testimony about Anderson's comment about rape. Counsel was not asked why he did not object to that testimony, so he never had a chance to explain (as he did with the other challenged evidence) how it might fit into a trial strategy. But even if no reasonable lawyer would have failed to object to this testimony, its admission did not prejudice Anderson. At trial, it was uncontested that Anderson shot Murr to death, that he pursued him through the house while continuing to fire until the gun was empty, and that he had talked about killing Murr for months beforehand. Against that evidence, Anderson's only defense was that he was responding to Murr's threats and insults. Given all the jury heard about the brutality of the killing and about Anderson's animus toward Murr, there is not a reasonable probability that the outcome of the trial was affected by testimony that Anderson once made a comment about rape to a coworker,

21

however unseemly or offensive it may have been. See *Talley v. State*, 314 Ga. 153, 162-163 (3) (a) (875 SE2d 789) (2022) (defendant not prejudiced when counsel did not object to testimony about a threat defendant had made, because while the threat "might have reflected negatively on" the defendant, it was "not particularly disparaging of [his] character" when viewed in context and "given the strength of the other admissible evidence against him") (citation and punctuation omitted); *Gibbs v. State*, 303 Ga. 681, 682-683 (1) (813 SE2d 393) (2018) (defendant not prejudiced when counsel did not object to testimony that arguably placed defendant's character in issue, given strong evidence of defendant's guilt). Because Anderson cannot show he suffered prejudice from this testimony, his claim of ineffectiveness on this ground fails.

*Judgment affirmed. All the Justices concur.*