319 Ga. 588
FINAL COPY

S24A0694. HEYWARD v. THE STATE.

Pinson, Justice.

Aimee Glover Heyward ("Heyward") shot and killed her husband Bruce Heyward. Heyward was charged with malice murder and felony murder predicated on aggravated assault, among other crimes. At trial, Heyward raised several defenses and asked for a jury instruction on voluntary manslaughter as a lesser offense of malice murder. The trial court gave that instruction. But at defense counsel's request, the trial court did not also instruct the jury that it could find Heyward guilty of voluntary manslaughter as a lesser offense of felony murder.

The jury found Heyward not guilty of malice murder but guilty of felony murder. On appeal, Heyward contends that her trial counsel provided constitutionally ineffective assistance by asking for a jury instruction on voluntary manslaughter as a lesser offense of malice murder but not of felony murder.

We affirm Heyward's convictions because she has not shown that she suffered prejudice from counsel's decisions about these jury instructions. Given the evidence at trial—that Heyward and Bruce had a long history of difficulties that culminated in a series of verbal and physical altercations on the day of the shooting—the jury was not likely to find that Heyward experienced the kind of sudden and severe provocation that could reduce murder to voluntary manslaughter. So even if the jury had the choice to find Heyward guilty of voluntary manslaughter rather than felony murder, Heyward cannot show a reasonable probability that it would have made that choice. As a result, Heyward has not established prejudice from her counsel's decisions, and so her claim fails. Her convictions and sentence are therefore affirmed.

1. Heyward was convicted of felony murder and other crimes in connection with shooting and killing Bruce.[1] The evidence at trial

---

[1] Bruce was killed on February 25, 2019. On May 23, 2019, a DeKalb County grand jury indicted Heyward for malice murder, felony murder predicated on aggravated assault, aggravated assault, possession of a firearm dur-

showed the following.

Heyward and Bruce lived with their teenage daughter, Brianna. Their son, Bruce Jr., was away at college. Heyward and Bruce had a troubled relationship—in Brianna's words, "the bad outweighed the good." They fought regularly, and sometimes these arguments escalated enough that the police were called. Over the years each of them had been arrested for violent conduct toward the other.

On the day before the killing, the police came to the home three times to break up arguments. Each time, the police separated Heyward and Bruce but did not make an arrest. The last such occasion was shortly after midnight, when police responded to a report that

---

ing the commission of a felony, and cruelty to children in the first degree. Heyward was tried by a jury from September 27 to October 2, 2021. The jury found Heyward not guilty of malice murder but guilty of all other counts. Heyward was sentenced to life in prison for felony murder, five years in prison for the firearm possession charge, and five years in prison for cruelty to children, all to be served consecutively, with the remaining count merging for sentencing, for a total sentence of life plus ten years. Heyward filed a timely motion for new trial, which she later amended through new counsel. After a hearing, the trial court denied the motion for new trial on August 1, 2023. Heyward filed a timely notice of appeal. The case was docketed to the April 2024 term of this Court and submitted for a decision on the briefs.

Bruce had been drinking, had taken Heyward's keys, and was "very, very combative." Officers told them to go into different rooms and then left.

About an hour later, the Heywards' daughter, Brianna, was awoken by her father "screaming" that Heyward had a gun to his head. Brianna left her bedroom and saw her parents in the hall. Brianna and Bruce retreated to Brianna's bedroom, where Bruce called 9-1-1. Heyward went into her own bedroom and packed some things into an overnight bag. Then she went downstairs, and Bruce followed, still on the phone with 9-1-1 and also recording Heyward with a phone camera. In Brianna's words, Bruce was "basically trying to record her leav[ing]." Heyward opened the front door and stepped outside. Bruce followed her out, and Brianna came outside just after them.

Brianna described what happened next. For a moment Bruce stood on the front steps of the home. Heyward was a few steps away, down in the yard, with her back to him. Bruce never made a move

4

toward Heyward and was not holding a weapon. He said to Heyward, "You got it." Then, suddenly, Heyward turned around and shot Bruce in the chest. Heyward "took off running" around the right side of the home toward the back. Bruce, covered in blood, briefly went inside to look at his wound in the bathroom mirror, then returned to the front door, where he collapsed.

Brianna called 9-1-1. When the police arrived, Bruce was still alive. He told officers, "She shot me," and said he had not known that "she" had a gun. Brianna told police that Heyward was the shooter. Officers began to process the scene while Bruce was loaded into an ambulance. Bruce died on the way to the hospital.

Officers quickly found Heyward in the street a few blocks away and placed her under arrest. Police found a spent nine-millimeter shell casing in the overnight bag that Heyward was carrying, and a Glock nine-millimeter handgun in a sewer drain in the back yard where Heyward had fled. The handgun was consistent with both the spent shell casing and the bullet that was removed from Bruce's body.

Heyward testified in her own defense. She described her relationship with Bruce as "very" violent and said that Bruce abused her both physically and verbally. Among other things, Bruce would tell Heyward that married women had to live by certain rules and that "the only way [she] was getting out of the marriage is death do us part." Heyward said that Bruce was more aggressive when he drank, and that he drank "a lot every day," including on the day of the shooting. (An autopsy revealed that Bruce's blood alcohol content was 0.143 when he was killed.) On the night of the shooting, Heyward said, she was in Bruce Jr.'s room when Bruce broke in the door and took her keys. She called Bruce Jr. at college to ask him to come pick her up, but Bruce called Bruce Jr. and told him not to come. Heyward eventually got her keys back from Brianna and started packing a bag so she could leave the home. Among the items Heyward put in the bag was a gun.

Heyward said she then tried to leave, heading down the stairs and out the door, and Bruce followed her. When Heyward reached the front lawn, Bruce "began to chase" her. He caught up with her,

6

grabbed her arm, and tried to take her bag. The two struggled. Both had their hands in the bag. During the struggle, the gun went off inside the bag. Heyward did not know Bruce had been hit. She panicked and fled on foot. Along the way, she left the gun in the sewer drain because it "was the safest place to put it." When she was arrested, she was waiting to return to the house so that (as she believed) Bruce would have time to fall asleep.

A medical examiner testified about Bruce's fatal injury. She said that the lack of soot or stippling around the entrance wound suggested that Bruce was shot from at least two or three feet away. But the defense pointed out that Heyward's overnight bag had a small hole in it, surrounded by black stains, in the compartment where the spent shell casing was found. The medical examiner acknowledged that if the gun were fired through an "intermediary target" like a bag, there might not be soot or stippling around Bruce's wound.

2. Heyward contends that her trial counsel provided constitu-

tionally ineffective assistance by asking for a jury instruction on voluntary manslaughter as a lesser offense of malice murder but not as a lesser offense of felony murder. See OCGA § 16-5-2 (a) (defining "voluntary manslaughter" as the killing of another person, "under circumstances which would otherwise be murder," where the perpetrator "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person").

(a) At the charge conference, Heyward asked for jury instructions on several defenses, including accident and battered person syndrome, and for an instruction on voluntary manslaughter as a lesser offense of murder. The trial court agreed to give those instructions, but asked how the voluntary manslaughter instruction should be reflected on the verdict form. The court explained that the instruction could apply to two counts in the indictment: Count 1, malice murder, and Count 2, felony murder predicated on aggravated assault family violence. The court asked whether both counts on the verdict form should include an option for not guilty of the charged

8

crime but guilty of voluntary manslaughter, or whether that option should be included under only one count or the other. After an extensive back-and-forth about the need to avoid jury confusion and inconsistent verdicts, the trial court said it would include the voluntary manslaughter charge under both counts. But Heyward's counsel disagreed, saying, "I don't want to get this wrong. I don't think that's usually how it is." The court asked counsel directly what she wanted the verdict form to say: "Do you want it under both or just one?" Trial counsel replied, "One. We just want it under Count 1, malice murder." The trial court agreed.

The trial court's instructions to the jury and the verdict form were consistent with counsel's request.[2] The court told the jury it could find Heyward guilty of voluntary manslaughter instead of malice murder, as follows:

> Members of the jury, in considering the malice mur-

---

[2] Counsel did not expressly ask that the trial court's *instructions* on voluntary manslaughter be applied only to the malice murder count. But it is undisputed—and counsel confirmed at the hearing on Heyward's motion for new trial—that that was counsel's intention, and that the colloquy about the verdict form applied to the jury instructions as well.

der charge, you must decide whether defendant was sufficiently provoked and acted out of passion. If you find this, you may not return a verdict of guilty of malice murder, but you would be authorized to return a verdict of guilty of voluntary manslaughter. . . . If you decide that enough time passed between the provocation and the killing for a reasonable person to have cooled off and regained judgment, then the killing is not voluntary manslaughter.

The court also gave the statutory definition of voluntary manslaughter and explained what could be sufficient provocation under the statute. But as counsel requested, the court did not give a voluntary manslaughter instruction with respect to the felony murder charge. And the verdict form did not include an option for guilty of voluntary manslaughter under Count 2, felony murder. The jury found Heyward not guilty of malice murder but guilty of felony murder.

(b) To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was professionally deficient and that she suffered prejudice as a result. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022). To establish deficiency, a defendant must show

that her lawyer performed "in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *Scott v. State*, 317 Ga. 218, 221 (2) (892 SE2d 744) (2023) (citation and punctuation omitted). To establish prejudice, a defendant "must show that, but for the deficiency, there was a 'reasonable probability' that the result of the trial would have been different." *Anderson v. State*, 319 Ga. 56, 64 (5) (b) (901 SE2d 543) (2024) (citation omitted). If a defendant fails to establish either deficiency or prejudice, the claim fails. See *Taylor v. State*, 315 Ga. 630, 647 (5) (b) (884 SE2d 346) (2023).

Here, we start (and end) with prejudice. To show prejudice from counsel's decision not to ask for a voluntary manslaughter instruction in connection with the felony murder charge, Heyward must establish a reasonable probability that the jury, if given the choice, would have found her guilty of voluntary manslaughter instead of felony murder. To reach that outcome, the jury would have had to find that Heyward's actions fit the definition of felony murder—as the jury did find—but that she acted "solely as the result of

11

a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." See OCGA § 16-5-2 (a).

But such a finding of provocation simply was not supported by the evidence at trial. "[E]vidence of a defendant's anger and frustration caused by an antagonistic relationship with the victim, even to the extent the relationship involved physical confrontations, is generally not sufficient to show even . . . slight evidence" that a killing should be reduced from murder to voluntary manslaughter. *Watkins v. State*, 313 Ga. 573, 577 (2) (872 SE2d 293) (2022). The same goes for evidence of "ongoing marital difficulties," even when those difficulties result in heated verbal and physical confrontations. See *Russell v. State*, 295 Ga. 899, 901 (2) (764 SE2d 812) (2014). See also *Smith v. State*, 296 Ga. 731, 737 (3) (770 SE2d 610) (2015) (fighting is not the type of provocation that demands a voluntary manslaughter charge). And that is the kind of evidence the jury heard here. The evidence at trial was that Heyward and Bruce had a long history of

difficulties culminating in a heated dispute on the night of the shooting. That evening, the fighting apparently escalated beyond words, as Heyward held a gun to Bruce's head and Bruce broke through a door into a bedroom where Heyward was staying. Eventually, Heyward packed a bag, put a gun in the bag, and left the house, with Bruce following some distance behind. When they got outside, there was a pause while Bruce stood some distance from Heyward. Bruce said, "You got it." And then Heyward turned around and shot Bruce. In short, this was evidence of an "antagonistic relationship" with "ongoing" difficulties that culminated in deadly violence—not the kind of evidence from which the jury was likely to find sudden provocation.

The evidence cut against a finding of the required provocation in another way, too: it showed that Heyward was arguably in the process of removing herself from the fight—cooling off—when she intentionally shot Bruce. As the jury was instructed, a sufficient cooling-off period would "preclude a voluntary manslaughter verdict." *Hatney v. State*, 308 Ga. 438, 442 (2) (841 SE2d 702) (2020);

see OCGA § 16-5-2 (a) ("[I]f there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.").[3]

That the evidence did not support a finding of sufficient provocation is not changed by the fact that the jury acquitted Heyward of malice murder. The jury could have reached that verdict of not guilty for any number of reasons that are unrelated to the question of provocation and that are fully consistent with a guilty verdict on the felony murder count. And we "cannot know and should not speculate" why a jury reaches the verdicts it does. *McElrath v. State*, 308 Ga. 104, 109 (2) (a) (839 SE2d 573) (2020) (citation and punctuation

---

[3] The jury heard two versions of these events: Brianna's and Heyward's. The evidence recounted above is drawn from Brianna's narrative, because that is the version the jury presumably credited in finding Heyward guilty. But needless to say, Heyward's version—in which the gun accidentally fired inside her bag during a struggle—also would not support a finding that Heyward intentionally shot Bruce after a sudden provocation.

14

omitted). So here, the jury's verdict of not guilty on the malice murder count does not establish that, if given the choice, the jury was likely to have found that Heyward was sufficiently provoked to reduce her felony murder verdict to voluntary manslaughter.

Given the evidence at trial, there is little chance that the jury would have found sufficient provocation to support a verdict of voluntary manslaughter rather than felony murder. As a result, Heyward cannot demonstrate a reasonable probability that the jury would have returned that verdict if counsel had asked for a voluntary manslaughter instruction in connection with the felony murder charge. Having failed to establish prejudice, her claim of ineffective assistance fails.

*Judgment affirmed. All the Justices concur.*

MCMILLIAN, Justice, concurring.

I join the Court's opinion in full. I write to add to Division 2 (b) another reason why it was not reasonably probable that "the jury, if given the choice," would have found Heyward "guilty of voluntary

15

manslaughter instead of felony murder." Maj. Op. at 592. Here, the jury did not find Heyward guilty of voluntary manslaughter, even after being given the choice, when considering whether she committed malice murder. As the Court's opinion points out, the trial court instructed the jury that it could find Heyward guilty of voluntary manslaughter instead of malice murder if it found that she was sufficiently provoked and acted out of passion. After hearing these instructions and the exact same evidence it would have heard had voluntary manslaughter also been charged in connection with felony murder, the jury elected not to find Heyward guilty of voluntary manslaughter in connection with malice murder. That is another data point supporting that a voluntary manslaughter charge in connection with felony murder would not likely have altered the trial outcome. See generally *Sigman v. State*, 287 Ga. 220, 221-22 (2) (695 SE2d 232) (2010) (no prejudice in counsel's failure to request separate jury charges on reckless conduct and simple battery when the jury rejected involuntary manslaughter based on reckless conduct and simple battery).

16

Decided August 13, 2024.

Murder. DeKalb Superior Court. Before Judge Barrie.

*Daniel H. Petrey*, for appellant.

*Sherry Boston, District Attorney, Deborah D. Wellborn, Tauri L. Thomas, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Clint C. Malcolm, Senior Assistant Attorneys General, Sarah J. Thomas, Assistant Attorney General*, for appellee.